FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

98 OCT 19 PM 1:02

U.S. DISTRICT COURT
N.D. OF ALABAMA

BECKY WALLACE,                    )

    PLAINTIFF,                   )

VS.                               )          CV97-H-2496-S

BEC/ALLWASTE and                  )
JAMES GALBREATH,
                                  )
    DEFENDANTS.

**ENTERED**

**OCT 1 9 1998**

### MEMORANDUM OF DECISION

The Court has before it the August 14, 1998 motion of

defendants BEC/Allwaste (BEC) and James Galbreath for summary

judgment.  Pursuant to the Court's August 19, 1998 and September

17, 1998 orders, the motion was deemed submitted, without oral

argument, on September 18, 1998.  Defendants filed their evidence

in support of the motion on August 27 and a supporting brief on

September 3, 1998.  Plaintiff Becky Wallace filed a memorandum in

opposition to defendants' motion on September 18 and their

supporting evidence on September 10, 1998.

On October 1, 1998, defendants filed a motion to strike

various portions of plaintiff's affidavit.  The Court has

considered the defendants' motion to strike and ruled on this

motion by a separate order.  In considering the motion for

summary judgment, the Court will rely on only those portions of
plaintiff's affidavit that have withstood defendants' challenges.

## I. Procedural History

Plaintiff Becky Wallace commenced this action on September
18, 1997 by filing a complaint in this Court alleging that
defendant Galbreath made inappropriate sexual advances toward her
and that defendant BEC ratified such conduct and retaliated
against her for filing an EEOC charge. Plaintiff contends that
defendants' alleged conduct constitutes (1) sexual harassment
under Title VII by BEC; (2) retaliation under Title VII by BEC;
(3) constructive discharge under Title VII by BEC; (4) negligent
supervision and retention by BEC; (5) a violation of the Equal
Pay Act by BEC; (6) assault and battery by BEC and Galbreath; and
(7) wrongful interference with plaintiff's employment
relationship by BEC and Galbreath. Defendants' August 14, 1998
motion for summary judgment asserts that plaintiff has failed to
establish a prima face case for any of plaintiff's claims.
Plaintiff filed a brief in opposition to the motion on September
18, 1998.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary
judgment is proper "if the pleadings, depositions, answers to

2

interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment
as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986).  The party asking for summary judgment always bears the
initial responsibility of informing the court of the basis for
its motion and identifying those portions of the pleadings or
filings which it believes demonstrate the absence of a genuine
issue of material fact.  Id. at 323.  Once the moving party has
met his burden, Rule 56(e) requires the nonmoving party to go
beyond the pleadings and by his own affidavits, or by the
depositions, answers to interrogatories, and admissions of file,
designate specific facts showing that there is a genuine issue
for trial.  Id. at 324.

The substantive law will identify which facts are material
and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  All reasonable doubts about the facts and
all justifiable inferences are resolved in favor of the non-
movant.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th
Cir. 1993).  A dispute is genuine "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson, 477 U.S. at 248.  If the evidence is merely colorable,

or is not significantly probative, summary judgment may be granted.  Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence

4

sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. Fitzpatrick, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[1]

On September 27, 1993, plaintiff Becky Wallace was hired by defendant BEC as an Equipment Operator IV, earning $9.00 per hour. (Wallace Aff. ¶ 3). A few months later, plaintiff was promoted to Equipment Operator III, earning $9.25 per hour. (Wallace Aff. ¶ 3; BEC Review Form for Wallace dated 11/1/94). Over the following four years, plaintiff's hourly wage was raised to $10.75 per hour. (Wallace Aff. ¶ 4).

The pay rates were based on the operator's ability to handle various types of equipment. (BEC Pay Rate Evaluation of Hourly Employees, Pl.'s Exh. 7; Stansberry Aff. ¶¶ 4-6). Equipment operator Garner made less than plaintiff at all times, but he was hired at a rate of $9.50 per hour in 1995. (Def.'s Exh. A to Def's Br. at 3; BEC Review Form for Garner dated 6/30/95). Equipment operator Porter was hired at a rate of $10 per hour in 1995 and made less than plaintiff at all times except for April of 1995, when Porter received twenty-five cents per hour more

---

[1] Although the record contains contradictory evidence, the Court will assume for purposes of this order that the alleged harassment by Galbreath and Tinsley actually occurred. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (noting that all reasonable doubts about the facts are resolved in favor of the non-movant in evaluating a motion for summary judgment).

6

than plaintiff.  (Def.'s Exh. A to Def's Br. at 3; BEC Review
Form for Porter dated 2/1/96).  Equipment operators Grim and
Strozier were at times paid more than plaintiff because of their
equipment skills.  (Stansberry Aff. ¶ 6).  Both Grim and Strozier
were allowed to work on a dozer when plaintiff was not.  (Letter
from Wallace to Mills dated 4/16/96; Letter from Wallace to Mills
dated 5/3/96).  Equipment operator Jacobs was paid more than
plaintiff because of his managerial experience and superior
equipment skills.  (Stansberry Aff. ¶ 6; compare Hourly Job
Interview Guide completed by Wallace, Pl.'s Exh. 3 with Hourly
Job Interview Guide completed by Jacobs, Def.'s Supp. Exh. D).
As of 1996, plaintiff made as much or more than 15 (out of 19)
other rock truck drivers.[2]  (Mills Aff. ¶ 5 & Exh. A).  On April
16, 1996, plaintiff sent a letter to BEC stating that she
believed she deserved better pay.  (Letter from Wallace to BEC
dated 4/16/96).

        In 1995, plaintiff began working on the EEC job.  (Wallace
Aff. ¶ 5).  Plaintiff's immediate supervisor was defendant
Galbreath.  (Wallace Aff. ¶ 5).  Galbreath would appear angry

---

        [2] The Mills affidavit states that only two rock truck
drivers earned more than Wallace.  However, the exhibit to the
affidavit lists three employees (Boren, Looney, and Pierce) as
earning more than $10.75 per hour.

when male coworkers talked to plaintiff on the radio, went to lunch with plaintiff, or gave her gifts. (Wallace Aff. ¶¶ 6, 9, 10). Galbreath asked plaintiff's coworkers to leave her alone and falsely told a coworker that plaintiff was married and had several children. (Wallace Aff. ¶¶ 6, 8). Galbreath tickled plaintiff on a regular basis, occasionally put his arm around plaintiff, and called her "toots" and "dumpling butt." (Wallace Aff. ¶ 12). Plaintiff voluntarily hugged other coworkers. (Wallace Dep'n at 49-53). Galbreath stopped referring to plaintiff as "toots" and "dumpling butt" once she began referring to Galbreath by other names. (Wallace Dep'n at 171-72). Galbreath once suggested that he and plaintiff stay in the same hotel room and go out to dinner; however, Galbreath never asked plaintiff for sex. (Wallace Aff. ¶ 13; Wallace Dep'n at 45-46). Galbreath would not give plaintiff her paycheck unless she begged him for it. (Wallace Aff. ¶ 14).

Galbreath reprimanded plaintiff on May 5, 1995 for tardiness and on April 27, 1996 for an unexcused absence. (Notice of Employee Reprimand dated 5/2/95; Notice of Employee Reprimand dated 4/27/96). In late April or May of 1996, plaintiff asked Galbreath to stop tickling her, and Galbreath complied. (Wallace Dep'n at 77-85). On June 19, 1996, plaintiff received a written

warning from General Operations Manager Donald Stansberry for

being late or absent more than ten percent of the workdays.

(Wallace Aff. ¶ 16; Memorandum from Stansberry to Wallace dated

6/19/96).  On June 25, 1996, plaintiff complained to Jody Saiia,

President of BEC, and Controller Steve Mills about Galbreath's

behavior.  (Wallace Aff. ¶¶ 19-24; Letter from Wallace to Saiia

dated 6/25/96).  Mills spoke with plaintiff's co-workers, who

denied plaintiff's allegations regarding Galbreath's behavior.

(Mills Aff. ¶ 8).

On July 4, 1996, Saiia informed plaintiff she was being

transferred to another job in Ragland.  (Wallace Aff. ¶ 25).

This job provided plaintiff with the opportunity to train on a

bulldozer, which would lead to higher pay; was closer to

plaintiff's home; and separated plaintiff from Galbreath.  (Saiia

Aff. ¶ 5; Stansberry Aff. ¶ 7).  Plaintiff refused the transfer

because she believed that the Ragland supervisor was good friends

with Galbreath, and Saiia fired her.  (Wallace Aff. ¶¶ 25, 26).

The next day, Saiia apologized for his decision and asked

plaintiff to accept the transfer so that he could investigate

plaintiff's claims.  (Wallace Aff. ¶ 27).  Plaintiff agreed and

did not miss a day of work.  (Wallace Aff. ¶ 27, 28; Saiia Aff. ¶

6; Stansberry Aff. ¶ 7).  Following the transfer, Galbreath did

9

not bother plaintiff.  (Wallace Dep'n at 191).

On July 12, 1996, Saiia informed plaintiff that he had not found any evidence to substantiate plaintiff's claims.  (EEOC Charge).  On July 15, 1996, plaintiff filed a charge of discrimination with the EEOC addressing her allegations regarding pay and Galbreath's behavior and her belief that the Ragland position was less desireable.[3]  (EEOC Charge).

Several weeks after plaintiff began the Ragland job, a co-worker, Mike Tinsley, twice described to her a sexual encounter between himself and his wife.  (Wallace Aff. ¶ 28; Wallace Dep'n at 201-03).  On March 7, 1997, plaintiff asked Carol White in Human Resources and General Operations Manager Stansberry for a transfer due to the conduct of Tinsley.  (Wallace Aff. ¶¶ 30, 31; Wallace Dep'n at 301).  Stansberry investigated plaintiff's complaints and found no evidence to substantiate plaintiff's

_____

[3] Defendants briefly argue that the alleged harassment at Ragland should not be considered by the Court because it is outside the scope of the EEOC charge.  See Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970).  A judicial complaint under Title VII "may encompass any kind of discrimination like or related to allegations contained in the charge."  Id. (internal quotations omitted).  Construing the facts in a light most favorable to plaintiff, the Court will not exclude the alleged conduct at Ragland for purposes of this order on the grounds that the conduct could be "related to" the sexual harassment alleged in the EEOC charge.

10

claims.   (Stansberry Aff. ¶ 11).   Stansberry refused the
transfer, and plaintiff quit her job at BEC.   (Wallace Aff. ¶
32).

### IV. Applicable Substantive Law and Analysis

Plaintiff's complaint contains the following claims: (1)
sexual harassment under Title VII against BEC; (2) retaliation
under Title VII against BEC; (3) constructive discharge under
Title VII against BEC; (4) a violation of the Equal Pay Act
against BEC; (5) assault and battery against BEC and Galbreath;
(6) wrongful interference with plaintiff's employment
relationship against BEC and Galbreath; and (7) negligent
supervision and retention against BEC.   Defendants' motion for
summary judgment asserts that plaintiff has failed to establish a
prima face case for any of plaintiff's claims against either
defendant.   The Court will address plaintiff's claims separately.

### 1. Sexual Harassment by BEC

Section 703(a) of Title VII prohibits an employer from
failing or refusing to hire or discharging any individual, or
otherwise discriminating "against any individual with respect to
his compensation, terms, conditions, or privileges of employment,
because of such individual's . . . sex."   42 U.S.C. § 2000e-
2(a)(1) (1994).   Title VII permits two types of claims against an

11

employer: hostile work environment and discrimination in the form
of a tangible adverse employment action. Burlington Indus., Inc.
v. Ellerth, 118 S. Ct. 2257, 2270 (1998); Faragher v. City of
Boca Raton, 118 S. Ct. 2275, 2292-93 (1998). A claim of sexual
harassment or hostile work environment requires a showing that
(1) the employee belongs to a protected group; (2) the employee
was subject to unwelcome sexual harassment; (3) the harassment
complained of was based upon sex; and (4) the harassment
complained of affected a term, condition, or privilege of
employment.[4] Henson v. City of Dundee, 682 F.2d 897, 903-04
(11th Cir. 1982). Under the fourth element, sexual harassment
must be sufficiently severe or pervasive so that it alters the
conditions of the plaintiff's employment and creates an abusive
working environment. Meritor Sav. Bank, FSB v. Vinson, 477 U.S.
57, 67 (1986). Factors to consider in determining whether an

---

[4] Without an adverse employment action, defendant BEC would
be entitled to a defense as to liability or damages if it could
prove that (1) BEC exercised reasonable care to prevent and
correct promptly any sexually harassing behavior; and (2)
plaintiff unreasonably failed to take advantage of preventive
opportunities provided by BEC or to avoid harm otherwise. See
Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2293 (1998);
Burlington Indus., Inc. v. Ellerth, 118 S. Ct. 2257, 2270 (1998).
However, because the Court finds that plaintiff has failed to
establish a prima facie case of harassment, the Court will not
address the viability of BEC's defense.

12

environment is hostile or abusive include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonable interferes with an employee's work performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

In the present case, the alleged harassment consists of two offensive remarks by a coworker, Tinsley; tickling by Galbreath; Galbreath's apparent anger at plaintiff's interactions with male coworkers; Galbreath's occasional "toots" and "dumpling butt" references; Galbreath putting his arm around plaintiff; Galbreath's one-time suggestion that he and plaintiff have dinner together and spend the night in a hotel; and Galbreath making plaintiff beg for her paycheck. (Wallace Aff. ¶¶ 6-14, 28-29; Wallace Dep'n at 45-46). This conduct is not so frequent, severe, or physically threatening to be actionable. Indeed, when plaintiff asked Galbreath to cease the tickling, he complied. (Wallace Dep'n at 77-85). Galbreath also stopped referring to plaintiff as "toots" and "dumpling butt" once she began referring to Galbreath by other names. (Wallace Dep'n at 171-72). While Galbreath and Tinsley's remarks were inappropriate, the "mere utterance of an . . . epithet which engenders offensive feelings

13

in an employee" does not implicate Title VII. Meritor, 477 U.S. at 67 (internal quotations omitted). Furthermore, the Court finds no distinction between Galbreath's conduct and the tickling, massaging, and leering ruled inactionable by the Eleventh Circuit in Fleming v. Boeing Co., 120 F.3d 242 (11th Cir. 1997). See 120 F.3d at 245-46. Therefore, the Court rules that Galbreath and Tinsley's conduct was not so "severe or pervasive" as to create a hostile work environment.

Plaintiff relies on Henson v. City of Dundee, 682 F.2d 897 (11th Cir. 1982) for the proposition that Galbreath and Tinsley's conduct affected a term or condition of her employment. In Henson, a female employee was subjected to numerous sexual inquiries and vulgarities over the period of two years and repeated sexual advances, which the Eleventh Circuit found actionable. See 682 F.2d at 905. In the present case, however, the only alleged sexual advance was a single request for dinner and a stay at a hotel by Galbreath; plaintiff conceded in her deposition that Galbreath never asked plaintiff for sex. (Wallace Aff. ¶ 13; Wallace Dep'n at 45-46). At most, the evidence establishes occasional sexual comments which, although inappropriate, are not actionable under Title VII. Therefore, the Court finds that plaintiff has failed to establish a prima

14

facie case of sexual harassment.

## 2. Retaliation by BEC

In order to establish a prima facie case of retaliation, a plaintiff must show that (1) there was a statutorily protected participation, such as a claim of discrimination; (2) an adverse employment action occurred; and (3) there was a causal link between the participation and the adverse employment action. Bigge v. Albertsons, Inc., 894 F.2d 1497, 1501 (11th Cir. 1990) (per curiam). Once the plaintiff establishes a prima facie case, the employer must proffer a legitimate, nondiscriminatory reason for the adverse employment action. Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997); EEOC v. Reichhold Chems., Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993). If the employer offers legitimate reasons for the action, the plaintiff must then demonstrate that the proffered explanation is a pretext for retaliation. Holifield, 115 F.3d at 1566. Plaintiff contends that the formal reprimand regarding her attendance and the subsequent transfer to the Ragland position were in retaliation for her complaints regarding Galbreath's conduct and her pay. The Court will address each employment action separately.

### A. Reprimand on Attendance

Neither party disputes that plaintiff engaged in a

15

statutorily protected expression when she complained to Galbreath
and BEC or that the written reprimand by General Operations
Manager Stansberry was an adverse employment action.  See Wideman
v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1455-56 (11th Cir. 1998)
(noting that written reprimand may constitute an adverse
employment action).  However, defendant contends that plaintiff
has failed to show a causal link between the Stansberry reprimand
and the protected activity.  The protected activity and the
reprimands occurred as follows:

Date     Action

5/2/95   Galbreath reprimands plaintiff for tardiness.

4/16/96  Plaintiff sends letter to BEC re: her pay.

4/27/96  Galbreath reprimanded plaintiff for being absent.

5/96     Plaintiff asks Galbreath to stop tickling her.

6/19/96  General Operations Manager Stansberry formally
         reprimands plaintiff for being late or absent more than
         ten percent of the workdays.

6/25/96  Plaintiff sends letter to BEC re: Galbreath's conduct.
(Notice of Employee Reprimand dated 5/2/95; Letter from Wallace
to BEC dated 4/16/96; Notice of Employee Reprimand dated 4/27/96;
Wallace Aff. ¶ 16; Wallace Dep'n at 77-80; Memorandum from
Stansberry to Wallace dated 6/19/96; Wallace Aff. ¶¶ 19-24;

16

Letter from Wallace to Saiia dated 6/25/96).

While the Court has serious doubts as to the merits of plaintiff's prima facie case, the causal link element of a retaliation claim only requires plaintiff to establish that the protected activity and adverse action were not completely unrelated. Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993). Plaintiff has produced evidence tending to show that (1) BEC knew of plaintiff's complaints regarding her pay at the time the Stansberry, an agent of BEC, issued a written reprimand; and (2) Galbreath, an agent of BEC, knew of plaintiff's complaint to him to stop tickling her at the time he gave Stansberry an attendance report, which resulted the Stansberry memorandum.  See generally Henson v. City of Dundee, 682 F.2d 897, 909 (11th Cir. 1982) (discussing vicarious liability under Title VII). Therefore, a genuine issue of material fact remains as to the causal link element.

In response, defendant has shown a legitimate, nondiscriminatory reason for Stansberry's reprimand: plaintiff's frequent tardiness and absenteeism. Plaintiff does not dispute the attendance record in evidence. Rather, plaintiff asserts, without any supporting evidence, that male employees who were late or tardy did not receive such reprimands and that the

17

Stansberry memorandum was motivated by a retaliatory motive. Unsubstantiated assertions and arguments are not enough to withstand a motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir. 1987). Because plaintiff has failed to demonstrate that her attendance problems were a pretext for the adverse employment action, the Court finds that defendant is entitled to summary judgment on the retaliation claim for the Stansberry reprimand.

## B. Transfer to Ragland

The evidence shows that plaintiff complained to BEC president Saiia about her pay and Galbreath's conduct and that, in response, Saiia transferred plaintiff to a different position. (Wallace Aff. ¶¶ 19-25). However, plaintiff has failed to produce any evidence tending to establish that the transfer was an adverse employment action. While plaintiff need not show that the transfer was a "severe trauma," she must show that the transfer was objectively adverse. Doe v. DeKalb County Sch. Dist., 145 F.3d 1441, 1453 (11th Cir. 1998). In order to avoid making a federal case out of any transfer, the adversity must be

18

material[5]: "it is not enough that a transfer imposes some <u>de
minimis</u> inconvenience or alteration of responsibilities." <u>Id.</u> at
1453 & n.21.  The involuntary nature of the transfer is not
relevant to the issue of whether the transfer was unlawfully
adverse.  <u>Id.</u> at 1454.

In the present case, the new position provided plaintiff
with the opportunity to train on a bulldozer, which would lead to
higher pay; was closer to plaintiff's home; and separated
plaintiff from Galbreath.  (Saiia Aff. ¶ 5; Stansberry Aff. ¶ 7).
The alleged termination of plaintiff's employment was immediately
withdrawn and did not cause plaintiff to miss a single day of
work.  (Saiia Aff. ¶ 6; Stansberry Aff. ¶ 7).  Plaintiff has not
shown that the transfer adversely affected her salary, chances of
promotion, or benefits, or even that the transfer involved an
objectively undesirable location, loss of prestige, or fewer
responsibilities.  <u>C.f.</u> <u>Collins v. Illinois</u>, 830 F.2d 692, 704
(7th Cir. 1987) (upholding Title VII retaliation claim where

---

[5] As the Eleventh Circuit has noted, "if purely lateral
transfers were actionable, then '[t]he Equal Employment
Opportunity Commission, already staggering under an avalanche of
filings too heavy for it to cope with, would be crushed, and
serious complaints would be lost among the trivial.'" <u>Doe v.
DeKalb County Sch. Dist.</u>, 145 F.3d 1441, 1449 n.14 (quoting
<u>Williams v. Bristol-Myers Squibb Co.</u>, 85 F.3d 270, 274 (7th Cir.
1996)).

transfer involved fewer responsibilities and benefits but same salary). Rather, plaintiff contends that the transfer was undesirable because the supervisor at the Ragland location was friends with Galbreath. (Wallace Aff. ¶ 25). Apart from the lack of evidence supporting the existence of such a friendship, the Court fails to comprehend how a friendship between two supervisors transforms a lateral transfer into a materially adverse employment action. The Court finds that plaintiff has not produced sufficient evidence of an adverse employment action, and therefore defendant BEC is entitled to judgment as a matter of law on the retaliation claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## 3. Constructive Discharge by BEC

Plaintiff also claims that she was constructively discharged in violation of Title VII. In order to establish a prima facie case for sex discrimination, a plaintiff must show that her working conditions were "so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign." Bourque v. Powell Elec. Mfg. Co., 617 F.2d 61, 65 (5th Cir. 1980). The evidence establishes that Galbreath's alleged harassment stopped once plaintiff was transferred to Ragland. (Wallace Dep'n at 191). At the Ragland job, a co-worker, Mike

20

Tinsley, twice described to plaintiff a sexual encounter between himself and his wife. (Wallace Aff. ¶ 28; Wallace Dep'n at 201-04).

The Court refuses to rule that two isolated sexual remarks by a coworker made plaintiff's working conditions so intolerable as to force her to quit. Tinsley's comments appear relatively trivial when compared with plaintiff's resignation and certainly did not materially alter the terms or conditions of employment under Title VII. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). The Court finds that plaintiff was not constructively discharged, and defendant BEC is entitled to judgment as a matter of law on that claim.

## 4. Equal Pay Act Violation by BEC

Plaintiff alleges that she was paid less than her male coworkers in violation of the Equal Pay Act. The Equal Pay Act provides that "[n]o employer. . . shall discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which require equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. §

21

206(d)(1) (1994).  Therefore, in order to make out a prima facie

case under the Equal Pay Act, a plaintiff must show that (1) she

receives lower pay than a male co-employee; and (2) she performs

work that is substantially equal in skill, effort and

responsibility under similar working conditions.  <u>Mulhall v.</u>

<u>Advanced Sec., Inc.</u>, 19 F.3d 586, 590 (11th Cir. 1994); <u>Waters v.</u>

<u>Turner, Wood & Smith Ins. Agency, Inc.</u>, 874 F.2d 797, 799 (11th

Cir. 1989).  A plaintiff does not have to show that the skills or

qualifications of the actual male employees holding the position

are equivalent to hers.  <u>Arrington v. Cobb County</u>, 139 F.3d 865,

876 (11th Cir. 1998).  However, "[f]actors such as experience and

education [do] operate as a defense to liability."  <u>Miranda v.</u>

<u>B&B Cash Grocery Store, Inc.</u>, 975 F.2d 1518, 1533 n.18 (11th Cir.

1992); <u>see also</u> <u>Glenn v. General Motors Corp.</u>, 841 F.2d 1567,

1571 (11th Cir. 1988) (analyzing legislative history of Equal Pay

Act).

### A. The Prima Face Case

Plaintiff argues that she was paid less than equipment

operators Garner, Porter, Grim, Strozier, and Jacobs, in

violation of the Equal Pay Act.  Plaintiff was hired at a rate of

$9.00 per hour in 1993, which was eventually increased to $10.75

per hour.  (Wallace Aff. ¶¶ 3, 4).  The employee records show

that Garner made less than plaintiff at all times and was hired

at a rate of \$9.50 per hour in 1995. (Def.'s Exh. A to Def's Br.

at 3; BEC Review Form for Garner dated 6/30/95). Equipment

operator Porter was hired at a rate of \$10 per hour in 1995 and

made less than plaintiff at all times except for April of 1995,

when Porter received twenty-five cents per hour more than

plaintiff. (Def.'s Exh. A to Def's Br. at 3; BEC Review Form for

Porter dated 2/1/96). Grim and Strozier at times were paid more

than plaintiff, and Jacobs at all times was paid more than

plaintiff. (Stansberry Aff. ¶ 6).

It is clear that plaintiff was paid less than Grim,

Strozier, and Jacobs at various times. However, because

plaintiff earned more than Garner at all times, Garner is not an

appropriate comparator. As to Porter, he earned less than

plaintiff every month except for April of 1995, in which Porter

received twenty-five cents more per hour. "Where the plaintiff's

salary is marginally smaller than one comparator and marginally

larger than another comparator, in a setting . . . where

legitimate factors upon which to base salary differentials . . .

can result in finely calibrated evaluations, a submissible Equal

Pay Act claim has not been established." Brousard-Norcross v.

Augustana College Ass'n, 935 F.2d 974, 979 (8th Cir. 1991). The

Court will not analyze every de minimis difference in the wage

rates of employees.  The marginal difference between the salary

of plaintiff and Porter over <u>one month</u> is not actionable,

particularly where the wage rate was calculated through a

standard formula with a large number of skill factors.  (Pay Rate

Evaluation of Hourly Employees).  Therefore, the Court holds that

plaintiff has met the first element of her prima facie case only

with respect to Grim, Strozier, and Jacobs.

    The evidence is unclear as to the actual duties of

plaintiff, Grim, Strozier, and Jacobs except that Grim and

Strozier were permitted to work on a dozer, resulting in higher

pay, while plaintiff was not.[6]  (Letter from Wallace to Mills

dated 4/16/96; Letter from Wallace to Mills dated 5/3/96).  Thus,

by plaintiff's own admission, she did not have the same job

duties as Strozier and Grim.  Viewing the evidence in a light

most favorable to plaintiff, the Court finds that plaintiff has

put forth sufficient evidence to establish a prima facie case

---

    [6] Plaintiff's deposition and April 16, 1996 letter to BEC
suggest that the crux of plaintiff's claim is not being allowed
to work on a dozer and other equipment, which would have resulted
in higher pay.  (Letter from Wallace to BEC dated 4/16/96;
Wallace Dep'n at 104-05; Pl.'s Br. in Opp'n at 12).  This type of
dispute is not covered the Equal Pay Act but should have been
addressed in a Title VII claim.  <u>See</u> <u>Waters v. Turner, Wood &
Smith Ins. Agency, Inc.</u>, 874 F.2d 797, 800-01 (11th Cir. 1989).

24

under the Equal Pay Act only with respect to Jacobs.

## B. The Affirmative Defense

BEC is entitled to a complete defense if it can show that sex provided no basis for the pay differential. See Mulhall v. Advance Sec., Inc., 19 F.3d 586, 590-91 (11th Cir. 1994). The evidence establishes that pay rates were based on the operator's ability to handle various types of equipment. (BEC Pay Rate Evaluation of Hourly Employees, Pl.'s Exh. 7; Stansberry Aff. ¶¶ 4-6). Jacobs was paid more than plaintiff because of his managerial experience and superior equipment skills. (Stansberry Aff. ¶ 6; compare Hourly Job Interview Guide completed by Wallace, Pl.'s Exh. 3 with Hourly Job Interview Guide completed by Jacobs, Def.'s Supp. Exh. D). Plaintiff argues that she had more experience than Jacob, (Pl.'s Brief in Opp'n at 15), but the undisputed evidence establishes that Jacobs had much more experience than plaintiff at the time of hiring, (compare Hourly Job Interview Guide completed by Wallace, Pl.'s Exh. 3 with Hourly Job Interview Guide completed by Jacobs, Def.'s Supp. Exh. D). Unsubstantiated assertions and arguments are not enough to withstand a motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir. 1987). The Court finds that sex

provided no basis for the pay differential between Jacobs and
plaintiff. Therefore, defendants are entitled to judgment as a
matter of law on the Equal Pay Act claim.

## 5. Assault and Battery by Galbreath and BEC

Plaintiff alleges that Galbreath's tickling her and
occasional hugs constitute an assault and battery upon her
person. A battery claim requires a showing that (1) Galbreath
intentionally touched plaintiff; and (2) the "touching was
conducted in a harmful or offensive manner." Ex parte Atmore
Community Hosp., No. 1961796, 1998 WL 321943, at *2 (Ala. June
19, 1998) (citing Restatement (Second) of Torts § 18 (1965)). An
assault is an intentional, unlawful offer to commit a battery.
Wright v. Wright, 654 So. 2d 542, 544 (Ala. 1995). "A bodily
contact is offensive if it offends a reasonable sense of personal
dignity." Restatement (Second) of Torts § 19 (1965). Therefore,
plaintiff must show that Galbreath's contact would offend the
ordinary person and is unwarranted by social custom at the time
and place at which it was inflicted. See Surrency v. Harbison,
489 So. 2d 1097, 1104 (Ala. 1986); Restatement (Second) of Torts
§ 19 cmt. a (1965).

Plaintiff claims the tickling and hugging are actionable as
offensive contact. Plaintiff stated in her deposition that she

26

hugged other coworkers; therefore, hugging would not be

unwarranted by social usages at BEC. (Wallace Dep'n at 49-53).

Furthermore, the Court will not hold Galbreath to a standard that

would require him to ask for permission before tickling someone.

Rather, the Court finds that Galbreath would be liable for

assault and battery only after plaintiff told Galbreath to stop.

The evidence establishes that Galbreath ceased tickling plaintiff

once she let him know that it was offensive to her. (Wallace

Dep'n at 77-85). Because the contact by Galbreath would not be

offensive to an ordinary person, plaintiff has failed to

establish a prima facie case for assault or battery, and

defendants are entitled to judgment as a matter of law on that

claim.[7]

## 6. Wrongful Interference with Employment Relationship by

## Galbreath and BEC

The elements of a prima facie case for intentional

interference with business or contractual relations are: (1) the

---

[7] Even if the Court had found the contact by Galbreath to be
offensive, BEC would not be liable because the tickling and
hugging were not committed within the scope of or in furtherance
of the agency and, once BEC learned of the alleged battery, BEC
adequately remedied the situation by physically separating
plaintiff and Galbreath. See generally Ex parte Atmore Community
Hosp., No. 1961796, 1998 WL 321943, at *3 (Ala. June 19, 1998)
(discussing employer's liability for intentional torts).

27

existence of a contract or business relationship; (2) the defendant's knowledge of that relationship; (3) intentional interference by the defendant with the relationship; and (4) damage to the plaintiff as a result of the defendant's conduct. Hickman v. Winston County Hosp. Bd., 508 So. 2d 237, 238 (Ala. 1987). An employer cannot be liable for a tortious interference with its own employment relationship. Id. Therefore, defendant BEC is entitled to judgment as a matter of law as to the intentional interference claim.

As to the claim against Galbreath, "corporate officers or employees may individually commit the tort of intentional interference with business or contractual relations to which their corporation or employer is a party." Hickman, 508 So. 2d at 239. However, in such a case, a plaintiff must further show that Galbreath was (1) acting outside the scope of his employment and (2) acting without justification and with actual malice. See id. The only conduct by Galbreath that could be construed as an interference with plaintiff's employment relations would be Galbreath's reporting of plaintiff's absences and tardiness. Plaintiff does not dispute that the information on plaintiff's attendance report was completely accurate. Galbreath obviously acted within "the general range of his authority" when he gave

28

General Operations Manager Stansberry a copy of plaintiff's
attendance record, and there is no evidence his conduct was not
justified by plaintiff's tardiness and absenteeism.  Therefore,
the Court finds that defendant Galbreath is entitled to judgment
as a matter of law as to the claim of intentional interference
with employment relations.  C.f. Hickman, 508 So. 2d at 240-41
(upholding directed verdict entered in favor of supervisor who
placed unfavorable write-ups about certain incidents in one
employee's file but not in the file of other employees similarly
involved in those incidents).

### 7. Negligent Supervision and Retention by BEC

Plaintiff claims BEC negligently supervised or retained
Galbreath.  Plaintiff has produced no evidence suggesting that
BEC should not have hired Galbreath.  The record contains no
instances of wrongful conduct by Galbreath, either at BEC or
while working for other employers, which would cause a reasonable
employer not to hire Galbreath.  Therefore, BEC is entitled to
judgment as a matter of law as to the claim of negligent
retention.

In order to establish a prima face case for negligent
supervision, plaintiff must show that (1) Galbreath was
incompetent; and (2) BEC had constructive or actual notice of

29

Galbreath's incompetence.  See Lane v. Central Bank of Ala., N.A., 425 So. 2d 1098, 1100 (Ala. 1983).  Even if Galbreath committed a tort against plaintiff, plaintiff has produced no evidence tending to show that BEC knew or should have known about Galbreath's alleged harassment before she sent a letter to BEC President Saiia on June 25, 1996.  (Wallace Aff. ¶¶ 19-24; Letter from Wallace to Saiia dated 6/25/96).  Plaintiff does not assert that Galbreath committed any torts against her after BEC received her June 25, 1996 letter.  Therefore, BEC had no notice of Galbreath's alleged harassment at the time the conduct occurred. Plaintiff has failed to establish a prima facie case for negligent supervision, and defendant BEC is entitled to judgment as a matter of law as to that claim.

In summary, the Court finds that defendants BEC and James Galbreath are entitled to judgment as a matter of law as to all claims asserted by plaintiff.  A separate order will be entered. DONE this _19th_ day of October, 1998.

SENIOR UNITED STATES DISTRICT JUDGE

30